IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CIVIL ACTION** |
| v. | No. 03-432-1 |
| **DORIAN SHABAZZ DELANEY** | |

# MEMORANDUM OPINION

**Goldberg, J.**                                                                                                                    **June 8, 2022**

On October 18, 2005, Defendant Shabazz Delaney was sentenced as a career offender to 180 months' imprisonment and five years of supervised release pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)). This Act subjects felons in possession of a firearm to a mandatory minimum sentence of fifteen years' imprisonment if they have at least three prior convictions for a "violent felony" or a "serious drug offense." Following the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015), which invalidated a portion of ACCA's sentencing enhancement, Defendant filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 challenging his status as a career offender. Defendant's motion was stayed while the federal appellate courts considered various Johnson-related issues.

At this juncture, I am unaware of any case pending in the appellate courts that would provide conclusive resolution of the issues involved in Defendant's habeas petition. Accordingly, his motion is ripe for resolution. Upon consideration of the parties' arguments, and for the following reasons, I will grant relief under § 2255.

I.  **PROCEDURAL BACKGROUND**

On February 16, 2005, Defendant pled guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) and 924(e), and one count of possession of a controlled substance, in violation of 21 U.S.C. § 844(a). Pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties stipulated that Defendant was an "armed career criminal" under the ACCA and agreed to jointly recommend a sentence of 180 months of imprisonment followed by five years of supervised release. On October 18, 2005, I accepted the parties' recommendation and entered a judgment of sentence consistent with the parties' agreement.

In October 2016, following issuance of the Johnson case, the United States Court of Appeals for the Third Circuit granted Defendant permission to file a second or successive § 2255 motion to challenge his sentencing as a career offender under ACCA. As noted above, I stayed this motion pending the outcome of several relevant Circuit Court cases.

During the stay, Defendant completed his term of incarceration and was placed on supervised release. On July 17, 2019, Defendant's term of supervised release was reduced by twelve months due to his successful completion of the Supervision to Aid Reentry Program. On September 28, 2021, I found that Defendant had violated the terms of his supervised release and imposed a new one-year term of supervised release which expires in September of this year.[1]

II.  **DISCUSSION**

The question before me is whether any of Defendant's five previous convictions of robbery qualify as predicate offenses under ACCA. As noted by the Government, little is known about the five prior offenses. The Pre-Sentence Report ("PSR") reflects that the first offense was committed in 1978, while Defendant, then 18-years old, ripped a chain from the victim's neck at a high school.

---

[1] Although Defendant's term of supervised release expires in three months, Defendant has nonetheless requested that I rule on his petition.

Per the PSR, a year later, Defendant and another individual robbed a person's change purse on a subway platform. The remaining three robbery offenses—all first-degree felonies involving a firearm—were committed in 1990. Defendant was sentenced to cumulative terms totaling ten to twenty-five years in state prison. (PSR ¶¶ 43–44, 48–50.)

The ACCA carries a mandatory minimum sentence of fifteen years for a defendant who has been convicted under 18 U.S.C. § 922(g) and who has three prior convictions for either a "violent felony" or a "serious drug offense." 18 U.S.C § 924(e)(1). The statute defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another **[the "elements" or "force" clause]**; or
> **(ii)** is burglary, arson, or extortion, involves use of explosives **[the "enumerated offenses" clause]**, or otherwise involves conduct that presents a serious potential risk of physical injury to another; **[the "residual" clause]**

18 U.S.C. § 924(e)(2)(B). The clause beginning with the language "or otherwise involves conduct," also known as the "residual" clause, has been struck down as unconstitutionally vague by the Supreme Court. Johnson, 576 U.S. at 606.

Since the Johnson decision, courts have repeatedly faced questions regarding whether prior felony convictions that were "qualifying offenses" under the ACCA's residual clause could be cabined into either the "elements" clause or the "enumerated offenses" clause. Here, the Government does not argue that any of Defendant's prior convictions fall within the "enumerated offenses" clause. Rather, it contends that at least three of Defendant's robbery convictions constitute "violent felonies" under the "elements" clause ("has as an element the use, attempted use, or threatened use of physical force against the person of another").

3

In order to determine whether a prior felony conviction falls within the "elements" clause, a court must employ the categorical approach set forth by the United States Supreme Court. Under this approach, a sentencing court "may look only to the elements of a defendant's prior conviction, not 'to the particular facts underlying those convictions.'" United States v. Abbott, 748 F.3d 154, 157 (3d Cir. 2014) (quoting Descamps v. United States, 570 U.S. 254 (2013)). The elements of the crime of conviction must necessarily match the elements of a "violent felony" as defined in ACCA. Id. If the elements of the crime of conviction "cover a greater swath of conduct than the elements of the relevant ACCA offense," then the conviction does not qualify as a predicate offense under ACCA. Mathis v. U.S., 579 U.S. 500, 509 (2016). Thus, even if a defendant's "conduct fits within" the ACCA offense, "the mismatch of elements" disqualifies the conviction as a predicate offense. Id.

A "modified" categorical approach may apply in specific circumstances. Under that approach, when the predicate statute at issue is divisible listing multiple alternative elements—so that the statute effectively creates several different crimes— the court can look beyond the elements of the prior conviction. Abbott, 748 F.3d at 157. The modified categorical approach assists in identifying, "among several alternatives, the crime of conviction so that the court can compare it to the" ACCA offense. Descamps, 570 U.S. at 264. Therefore, when a divisible statute is involved, the court may look at "Shepard documents," which are documents "beyond the face of the statute [consisting of] the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented,' to determine which of the alternative elements was involved in the defendant's conviction." Abbott, 748 F.3d at 158 (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)). Like the categorical approach, the modified categorical approach continues to focus on the elements of the predicate crime rather than the facts of that specific crime. Descamps, 570 U.S. at 263–64. Thus, "[a]fter consulting Shepard

documents and applying the modified categorical approach to determine the specific crime of conviction, the sentencing court then resorts to the traditional 'categorical approach' that requires comparing the criminal statute to the relevant generic offense." United States v Peppers, 899 F.3d 211, 231–32 (3d Cir. 2018).

At the outset of this analysis, the inquiry is whether the relevant predicate criminal statute is "divisible." A statute is divisible if it "comprises multiple, alternative versions of the crime." United States v. Chapman, 866 F.3d 129, 134 & n.5 (3d Cir. 2017). The divisibility of an alternatively phrased statute hinges on the distinction between "elements" of a crime and the "factual means" of how that crime was committed. Mathis, 579 U.S. at 517. Elements are "things the prosecution must prove to sustain a conviction" and are "what the jury must find beyond a reasonable doubt to convict the defendant." Id. (internal quotation marks omitted). By contrast, "factual means" are "extraneous to the crime's legal requirements" because they "need neither be found by a jury nor admitted by a defendant." Id.

Here, the relevant criminal statute is Pennsylvania's robbery statute, which, at the time of Defendant's offenses, consisted of five subsections, as follows:

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>     (i) inflicts serious bodily injury upon another;
>     (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>     (iii) commits or threatens immediately to commit any felony of the first or second degree;
>     (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediately bodily injury; or
>     (v) physically takes or removes property from the person of another by force however slight.

18 Pa. Cons. Stat. § 3701(a). The United States Court of Appeals for the Third Circuit has explicitly found that "[g]iven the clearly laid out alternative elements of the Pennsylvania robbery statute, it

is obviously divisible and, therefore, a sentencing court can properly look to [Shepard documents] to determine which subsection was the basis of [the defendant's] prior convictions." Peppers, 899 F.3d at 232 (quoting United States v. Blair, 734 F.3d 218, 225 (3d Cir. 2013)).

As noted above, Defendant has five prior robbery convictions. The Government concedes that the Shepard documents do not reveal sufficient information about Defendant's first two robbery convictions to render them qualifying predicate offenses under ACCA. As to the last three robbery convictions (those committed in 1990), the Government argues—and Defendant does not dispute—that the Shepard documents explicitly indicate that they were first-degree felonies, meaning that they were premised on either subsection (i), subsection (ii), or subsection (iii) of the Pennsylvania statute. The parties also agree that the Shepard documents do not allow a determination of which of those three statutory subsections formed the particular basis for any of Defendant's convictions.

Given this complicated ACCA roadmap, I finally come to the question as to whether any of subsections (i), (ii), or (iii) of § 3701(a) are predicate offenses that qualify under ACCA. Although the Third Circuit has not decided this issue in a published opinion, a panel of the Third Circuit and several district courts in this Circuit have determined that § 3701(a)(1) subsections (i) and (ii) fall within the scope of the "elements" clause. See United States v. Dobbin, 629 F. App'x 448, 452 (3d Cir. 2015) (subsection (ii)), cert denied, 578 U.S. 1017 (2016); United States v. Coffie, No. 01-cr-663-1, 2017 WL 3433991, at *5 (E.D. Pa. Aug. 9, 2017) (subsections (i) and (ii)); United States v. Maldonado, No. 10-cr-288, 2016 WL 4206371, at *5 (E.D. Pa. Aug. 9, 2016) (subsection (ii)). As to subsection (iii) of the robbery statute, the Government has repeatedly conceded that a conviction under this subsection does not necessarily require use of force under ACCA and, thus, is not a qualifying predicate offense. Coffie, 2017 WL 3433991, at *5; United States v. Villella, No. 06-cr-06, 2017 WL 1519548, at *7 (W.D. Pa. Apr. 27, 2017).

The Government posits that subsection (ii) constitutes a predicate offense. But even assuming that the Government is correct, that finding does not resolve the issue before me. It must still be determined which of the three subsections formed the basis of Defendant's robbery convictions. If the convictions were based on subsections (i) or (ii), they could potentially constitute predicate offenses because these sections appear to require the use of force. If the convictions were based on subsection (iii), however, they would not be predicate offenses because this section does not require the use of force, and Defendant would not be subject to the ACCA sentencing enhancement. Resolution thus turns on who bears the burden of proving that the prior convictions either are or are not qualifying offenses.

The Government argues that where there is a plausibly applicable portion of the robbery statute that qualifies as a predicate—in this case, subsection (ii)—the habeas petitioner bears the burden of proving that the robbery conviction in fact rested on a portion of the statute that did not qualify as an ACCA predicate—*i.e.*, subsections (i) or (iii). The Government emphasizes that "in habeas cases the general rule is that the petitioner himself bears the burden of proving that his conviction is illegal." United States v. Hollis, 569 F.2d 199, 205 (3d Cir. 1977). The Government cites to Pereida v. Wilkinson, 141 S. Ct. 754 (2021) where the Supreme Court addressed an immigrant's efforts to establish his eligibility for cancellation of removal, a discretionary form of relief under the Immigration and Nationality Act ("INA"), requiring certain nonpermanent residents to prove, among other things, that they have not been convicted of specified criminal offenses. Id. at 761. In Pereida, the Court found that although the government typically has the burden of showing that an alien has committed a crime of moral turpitude in removal proceedings, "the burden flips for '[a]pplications for relief from removal,' like the one at issue." Id. at 761. The Court determined that as part of the alien's burden, he "must demonstrate that he has not committed a crime involving moral turpitude." Id. at 761. Importing the "categorical approach" from the

7

criminal context, the Court recognized that the criminal impersonation statute of which the petition was convicted was divisible because it had at least four separate offenses. Id. at 763. In Pereida, the government had proven that three of these subsections constituted crimes of moral turpitude, leaving the petitioner "with the burden of proving as a factual matter that *his* conviction was for [a violation of the fourth section]." Id. (emphasis in original). The Court found that because Petitioner had failed to carry that burden by producing evidence about his crime of conviction, he failed to carry his ultimate burden of showing that he was not convicted of a crime involving moral turpitude. Id. at 764–65.

Pereida, however, is distinguishable primarily because that case involved the INA as opposed to the ACCA. Indeed, the Supreme Court in Pereida explicitly took note of this distinction, finding that when it came to civil immigration proceedings, as opposed to criminal proceedings, Congress had allocated the burden of proof "differently." Id. at 766. Unlike the language of the INA—which expressly puts the burden on the alien to prove that he had not been convicted of crimes of moral turpitude—the ACCA contains no similar language. See 18 U.S.C. § 924(e). Rejecting the notion that the ACCA and INA have a "shared text and purpose," the Supreme Court found that "the ACCA and INA provision at issue here bear different instructions. Both may call for the application of the categorical approach. But while the ACCA's categorical approach demands certainty from the government, the INA's demands it from the alien." Id. at n.7

In United States v. Peppers, 899 F.3d 211 (3d Cir. 2018)—a case decided prior to Pereida— the Third Circuit specifically addressed the proper burden of proof for purposes of deciding a § 2255 petition challenging the application of an ACCA sentencing enhancement. It held that a court is "required to 'presume that the conviction "rested upon [nothing] more than the least of th[e] acts" criminalized, and then determine whether even those acts are encompassed by the generic federal offense.'" Id. at 232–33. The Court found that "[s]ince we have no Shepard documents to guide us

and are thus left to apply the categorical approach in assessing [Defendant's] robbery convictions, we must assume he was convicted under the third degree robbery provisions and hence under a provision of Pennsylvania law that is broader than the generic requirements of the elements clause of ACCA." Id. at 233–34. Ultimately, the Court determined that, for purposes of the Defendant's § 2255 petition, Defendant's robbery conviction did not qualify as a predicate offense under the ACCA.

Given this precedential backdrop, I conclude that where a defendant has a prior conviction based on a divisible statute, a least a portion of which does not qualify as an ACCA predicate, the burden falls on the Government to prove that the prior conviction rests on the portion that does qualify. At least two courts within this Circuit have agreed with this approach. In United States v. Parrott, No. 09-cr-245, 2022 WL 377017, at *3 (E.D. Pa. Feb. 8, 2022), the government conceded that the Shepard documents did not conclusively establish the precise section of the robbery statute under which the defendant had been convicted, but, citing Pereida, contended that it was the defendant's burden to come forward with documents to prove that he was convicted under a portion that did not qualify under ACCA. Id. at *5. Judge Barclay R. Surrick rejected that argument, finding:

> The Government's reliance of Pereida is misplaced. First, Pereida is a civil immigration case interpreting the requirements of the INA, which unlike the ACCA, explicitly placed the burden on the petitioner. . . . Second, the Supreme Court in Pereida made clear that its holding was limited to immigration cases and not meant to be consulted in reference to the ACCA. . . . Finally, there is nothing in Pereida that calls into question the Third Circuit's holding in United States v. Peppers, 899 F.3d 211, 232 (3d Cir. 2018), which places the Shepard burden on the Government, not on the defendant.

Id. at *5.

Similarly, in United States. v. Giles, No. 94-cr-20-01, 2021 WL 5418158 (E.D. Pa. Nov. 19, 2021), the defendant filed a § 2255 petition challenging the application of ACCA to his sentence

9

based on two prior convictions for robbery under Pennsylvania law. Id. at *1. The government conceded that the Shepard documents for both robbery convictions failed to clearly establish which portion of the statute the defendant had been convicted under, but it argued—again relying on Pereida—that the burden was on the defendant to prove that he was convicted under a non-ACCA-qualifying portion of the statute. Id. at *5. Judge Michael Baylson rejected this argument and distinguished Pereida, noting that that case "does not displace the Third Circuit's decision in Peppers, which speaks specifically to the categorical approach as applied under the ACCA." Id. at *5. As it was unclear which portion of the robbery statute the defendant was convicted of violating, and as the Government conceded that a portion of the robbery statute would not qualify as a predicate offense under the ACCA, Judge Baylson concluded that the defendant was entitled to relief under § 2255. Id. at *6.

I agree with both Judges Surrick and Baylson. The Pereida case focused on an immigration statute that expressly set out the burden of proof and, thus, has no bearing on the proper interpretation of the ACCA. As such, I remain bound by the Third Circuit's explicit statement in Peppers that, absent Shepard documents proving otherwise, I must presume that a conviction at issue rested upon the least of the acts criminalized in the relevant statute. In turn, the Government bears the burden of proving that a particular conviction qualifies as a predicate offense under the ACCA's categorical approach.

Applying that principle here, I find that the Government has not met its burden of proof. The Government urges that robbery under subsection (ii) of the Pennsylvania statute would qualify as "violent felony." But the Government admits that it cannot prove that Defendant's prior robbery convictions rested on subsection (ii).[2] Accordingly, using the categorical approach, I must "'ignore

---

[2] Defendant also argues that even if the Government could prove that his prior convictions were premised on subsection (ii) of the robbery statute, that subsection allows robbery to be

10

the actual manner in which the defendant committed the prior offense' and 'presume that the defendant did so by engaging in no more than the minimum conduct criminalized by the state statute.'" United States v. Mayo, 901 F.3d 218, 230 (3d Cir. 2018) (quoting U.S. v. Ramos, 892 F.3d 599, 606 (3d Cir. 2018)).  In turn, I conclude that Defendant's prior robbery convictions could have been committed under subsection (iii), which, by the Government's own concession, would not constitute an ACCA predicate offense.

For the foregoing reasons, I will grant Defendant's Motion under 28 U.S.C. § 2255. Defendant's sentence will be vacated such that the remainder of his term of supervised release is terminated.

---

committed with a *mens rea* of recklessness.  Under the Supreme Court's decision in Borden v. United States, 141 S. Ct. 1817 (2021), an offense that can be committed with a *mens rea* of recklessness cannot constitute a "violent felony" for purposes of the ACCA.  Id. at 1825.  The Government counters that the statutory language explicitly imposes an intent requirement for at least part of subsection (ii), and that requirement logically extends to the entire provision.

Having already found that the Government has not met its burden of proving that Defendant's robbery convictions were committed under subsection (ii), I need not address this argument.